ROBERT A. DUNN
ALEXANDRIA T. DRAKE
DUNN & BLACK, P.S.
111 North Post, Suite 300
Spokane, WA 99201-0907
Telephone: (509) 455-8711
Facsimile: (509) 455-8734
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RADISSON HOTELS INTERNATIONAL, INC., a Delaware corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>RED LION HOTELS CORPORATION D/B/A RLH CORPORATION, a Washington corporation, and RED LION HOTELS FRANCHISING, INC., a Washington corporation,<br><br>                    Defendants. | CASE NO.:<br><br>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |

Plaintiff RADISSON HOTELS INTERNATIONAL, INC., by and through Dunn & Black, P.S., alleges as follows:

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL - 1

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

## **PARTIES**

1.      Plaintiff Radisson Hotels International, Inc. ("Radisson") is a Delaware corporation with a principal place of business located at 701 Carlson Parkway, Suite 200, Minnetonka, Minnesota  55305.  Plaintiff Radisson franchises guest lodging systems throughout the United States and abroad. More than 80 properties currently operate under the trademarked name "Radisson" in the United States.  Plaintiff Radisson is part of the Radisson Hotel Group, which includes other brands such as Radisson Collection, Radisson Blu, Radisson Red, Park Plaza, Park Inn by Radisson, and Country Inn & Suites by Radisson.

2.      Defendant Red Lion Hotels Corporation d/b/a RL Corporation ("RLH Corporation") is a Washington corporation with a principal place of business located at 1550 Market Street, Denver, Colorado 80202.  Its registered agent for service of process is Corporate Creations Network, Inc., West 505 Riverside Avenue, Suite 500, Spokane, Washington  99201.  RLH Corporation operates multiple franchised hotel brands, including Red Lion Hotels, Red Lion Inn & Suites, Hotel RL, GuestHouse, Settle Inn, 3 Palms Hotels & Resorts, America's Best Inns & Suites, Americas Best Value Inn, Knights Inn, Canadas

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL - 2

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

Best Value Inn, Country Hearth Inn & Suites, Jameson Inn, Lexington, Signature Inn, and Value Inn Worldwide.

3.    Defendant Red Lion Hotels Franchising, Inc. ("RLH Franchising," collectively with RLH Corporation "Red Lion") is a Washington corporation with a principal place of business located at 201 W. North River Drive, Suite 100, Spokane, Washington 99201. Its registered agent for service of process is Corporate Creations Network, Inc., West 505 Riverside Avenue, Suite 500, Spokane, Washington 99201. RLH Franchising shares common officers and directors with, and is a wholly owned subsidiary of, RLH Corporation. At all times material hereto, RLH Franchising was controlled by RLH Corporation. RLH Franchising serves as the franchisor in the RLH Corporation system.

## JURISDICTION AND VENUE

4.    The Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendants are citizens of different states, there is complete diversity between the parties, and there is more than $75,000 in controversy.

5.    Personal jurisdiction exists because RLH Corporation and RLH Franchising are citizens of the State of Washington who have had continuous and multiple personal contacts within this state, including but not limited to

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL - 3

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

transacting business in Washington (RCW § 4.28.185(A)(1)), committing tortious acts against Plaintiff Radisson within this state (RCW § 4.28.185(A)(2)), and owning, using, or possessing real and/or personal property situated in this state (RCW § 4.28.185(A)(3)).  Additionally, RLH Corporation and RLH Franchising are incorporated in this state and RLH Franchising has its principal place of business in this state. The Court's exercise of personal jurisdiction against Defendants is consistent with due process.

6.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant RLH Franchising's principal place of business is in this district and both Defendants are residents of the State of Washington.   In addition, a substantial part of the events or omissions giving rise to Plaintiff Radisson's claim occurred in this district such that venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

## **INTRODUCTION**

7.     Defendant Red Lion Hotels Corporation traces its roots back to 1937 when it began to engage in hotel development in Spokane, Washington. Known originally in the hotel industry as a Pacific Northwest mid-tier lodging brand with few properties outside the West Coast of the United States, Defendants Red Lion significantly overhauled its organization and focus in the

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL - 4

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

wake of the Great Recession in 2009, shedding employees and company-owned hotel properties.

8.    Led by President and Chief Executive Officer Greg Mount since January 2014, Defendants Red Lion has aggressively pursued a strategic plan designed to (1) increase its geographic footprint; (2) build a franchise company where historically the company owned its hotels; (3) sell off 45 percent of its real estate holdings to private investors and use the proceeds to grow the franchise company; and (4) increase the number of franchised hotel units under the Defendants Red Lion umbrella.  While charting its new course, Defendants Red Lion raised more than $100 million while maintaining ownership of the brand's intellectual property and name, and then  used that cash to pay off debt and build a global franchising business.

9.    As part of its business strategy, Defendants Red Lion engaged in strategic franchise acquisitions by adding various hotel brands to its portfolio. For example, in April 2018, Defendants Red Lion announced that they had acquired economy brand Knights Inn,  from Wyndham Worldwide for approximately $27 million. By so doing, Red Lion added more than 350 economy segment hotels to its portfolio in the United States and Canada with an

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL - 5

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

additional 47 hotels in development.   This acquisition alone increased the number of Defendant Red Lion's franchised units by 30 percent.

10.   Egregiously, in its efforts to grow its franchise system,  Defendants Red Lion knowingly and intentionally interfered with valid and existing agreements between its competitor Plaintiff Radisson and nine Plaintiff Radisson franchisees.   Those franchisees were affiliated with and owned and controlled by Inner Circle Investments of Ormond, Florida (collectively the "Inner Circle Franchisees").   Defendants Red Lion induced the Inner Circle Franchisees to breach their contracts with Plaintiff Radisson by promising them loans and   more than $5,000,000 of "Key Money."[1] This was done for an improper purpose and through improper means in order to  acquire the Inner Circle Franchisees' nine properties and territories from Plaintiff Radisson, force Plaintiff Radisson out of these territories, and enlarge Defendants' geographic footprint at Plaintiff Radisson's expense.

[1]  "Key Money" is a term of art in the hotel industry for up-front payments and other financial incentives made by a franchisor to induce a prospective franchisee to sign a franchise agreement. It often works as a powerful incentive used by the franchisor to secure desired properties in key markets.

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL - 6

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

11.    Prior to Defendants Red Lion's interference, Plaintiff Radisson had effectively established an active and profitable presence in the Inner Circle Franchisees' upscale territories.    Defendants Red Lion's unlawful conduct caused Plaintiff Radisson damage and significantly undermined Plaintiff Radisson's competitive presence in this market. Defendants Red Lion's improper purpose and intent to unlawfully interfere with Plaintiff Radisson's existing franchisee agreements is confirmed by and consistent with the company's stated intent and strategic efforts to build and transition to a "conversion brand".[2]

12.    On March 1, 2018, Defendants Red Lion announced that it had signed Franchise Agreements with ten Inner Circle Management Hotels.  Nine

---

[2] A conversion brand in the hotel industry is a brand whose hotels were once operated as other brands, rather than being initially constructed as the brand's hotel.  This can allow a brand to drastically increase its market footprint in a rapid manner because the conversion time for a hotel is typically much less than for a new construction.

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL - 7

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

of those Hotels were owned and operated as Plaintiff Radisson® brand hotels[3] subject to valid and binding Franchise Agreements with Plaintiff Radisson at the time of Defendants' announcement.    By converting and entering into Franchise Agreements with these Hotels with knowledge that they were subject to Plaintiff Radisson's existing Franchise Agreements, Defendants tortiously interfered with and unlawfully induced the Inner Circle Franchisees' breach of their Radisson Franchise Agreements.

13.    On or about March 2, 2018, Inner Circle principal Stephen Nalley publicly admitted that process of converting these Plaintiff Radisson Hotels to Red Lion brand Hotels had actually been in progress for over a year.    Thus, Defendants Red Lion's concerted efforts to interfere with and induce the Inner Circle Franchisees' breach of their agreements in order to acquire these established Plaintiff Radisson hotels actually began more than a year before the announced conversion.

---

[3] These nine Plaintiff Radisson® branded hotels were located in Albany, New York;  Appleton, Wisconsin;  Billings, Montana;  Cheyenne, Wyoming; Cromwell, Connecticut;  Hartford, Connecticut;  High Point, North Carolina; North Baltimore, Maryland; and St. Joseph, Missouri.

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL - 8

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

14.    Indeed, upon information and belief, Defendants Red Lion's interference began as early as the Fall of 2016.  This is evidenced by the fact that in or about January 2017, Inner Circle approached Defendants Red Lion's Regional Vice President of Development Natalie Stone regarding Defendants Red Lion's potential acquisition and/or conversion of Inner Circle properties subject to Franchise Agreements with Plaintiff Radisson.

15.    Thus, from at least that point in time, Defendants Red Lion's finance team was actively pursuing the possibility of taking over the Plaintiff Radisson hotels at issue.    Additionally, on or about November 30, 2017, Defendants Red Lion's representatives were at the Appleton, Wisconsin hotel working with Inner Circle's management team on conversion issues around November 30, 2017—approximately 4 months before Red Lion announced the conversion to the public. Upon information and belief, Defendants Red Lion similarly dispatched representatives to all nine properties to evaluate them in 2017.

16.    As a sophisticated franchisor in the industry, Defendants Red Lion would have known from its first discussion with Inner Circle that the Inner Circle Franchisees were contractually committed to license agreements with Plaintiff Radisson for a 20 year period.    As a matter of general industry

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL - 9

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

standard, no hotel franchisor would convert a property from another brand without first knowing and inquiring about the terms of the extant franchise relationship and the franchisee's economic health.   This is why if brand conversions occur, it is typically at the end of a franchise agreement's given term (in this case 20 years) or at contractually-designated windows during that term.

17.   At the time of its interference, Defendants Red Lion knew and understood that the Inner Circle Franchisees had no legal right to terminate the Plaintiff Radisson contracts, and yet it boldly moved forward with its tortious and deceptive activity. Defendants Red Lion's intentional interference with the contracts and financial inducement was the moving force behind Inner Circle's departure from the Radisson System. Defendants Red Lion's conduct was done in bad faith to gain economic advantage over a competitor, with full knowledge of Plaintiff Radisson's  legal and contractual relationship with Inner Circle as well as Inner Circle's significant financial woes described in this Complaint. Throughout their relationship with Radisson, the Inner Circle Franchisees represented that their repeated efforts to refinance their investments would results in the cash necessary to invest in the Radisson brand.

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL - 10

18.    Defendants Red Lion used their knowledge of Inner Circle's dire financial straits to offer significant financial incentives in order to induce Inner Circle's breach of the Plaintiff Radisson license agreements and simultaneous departure from the Radisson System. Defendants did so as with the intent to expand Defendants operations in nine markets where Red Lion had little to no penetration in a segment of the hotel industry (mid to upscale) that it sought to expand on as part of its transformational strategy first implemented in 2009. In so doing, Defendants deprived Plaintiff Radisson, a direct competitor of Defendant Red Lion, of its presence in those same markets.

19.    Defendants Red Lion's conduct as described in this Complaint continues to cause serious economic harm to Plaintiff Radisson.  By inducing the Inner Circle Franchisees' breach of the license agreements and wrongfully acquiring those properties for itself, Defendants Red Lion damaged Plaintiff Radisson by forcing it to expend significant resources in attempts to re-enter these nine markets, which will be difficult if not impossible.  Defendants Red Lion thereby unjustly profited and obtained substantial competitive gains to Plaintiff Radisson's detriment and at its expense. This lawsuit seeks to remedy the harm inflicted on Plaintiff Radisson by Defendants' unprivileged and intentional tortious interference with the Inner Circle agreements.

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL - 11

1

2

### **BACKGROUND FACTS**

20.    Inner Circle first joined the Plaintiff Radisson System when Inner

Circle franchisee 50 Morgan Hospitality Group, LLC entered into a license

agreement with Plaintiff Radisson for a hotel located in Hartford, Connecticut

on December 17, 2013.   In the ensuing years, Inner Circle's management

authorized Inner Circle affiliates to enter into license agreements with Plaintiff

Radisson for eight other hotels.  The property location, identity of each Inner

Circle affiliate, and execution date of each Radisson license agreement are as

follows:

| Location | Franchisee | Execution Date |
|----------|-----------|----------------|
| Hartford, CT | 50 Morgan Hospitality Group, LLC | December 17, 2013 |
| High Point, NC | Inner Circle High Point, LLC | November 26, 2014 |
| Timonium, MD | Timonium Recovery Trust, LLC | December 31, 2014 |
| Albany, NY | 205 Wolf Holdings, LLC[4] | August 14, 2015 |

[4]   On July 18, 2017, Plaintiff Radisson and 205 Wolf Holdings, LLC entered

into a Consent to Transfer and Second Amendment to License Agreement for

the Albany property, which had the effect of transferring the land upon which

the Albany hotel sits to 205 Wolf Land, LLC.  Similar transfers occurred with

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL - 12

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

| Location | Franchisee | Execution Date |
|----------|-----------|----------------|
| St. Joseph, Missouri | HISJ Holdings, LLC | October 8, 2015 |
| Cromwell, CT | 100 Berlin Holdings, LLC | November 18, 2015 |
| Billings, MT | 5500 Midland Holdings, LLC | December 30, 2015 |
| Cheyenne, WY | 204 Fox Holdings, LLC | December 30, 2015 |
| Appleton, WI | Appleton Holdings, LLC | March 15, 2017[5] |

respect to the Billings hotel (land transferred to 5500 Midland Land, LLC), the Cromwell property (land transferred to 100 Berlin Land, LLC), the High Point property (land transferred to High Point Land, LLC), the Appleton property (land transferred to Appleton Land, LLC), and the Cheyenne property (land transferred to 204 Fox Holdings, LLC).

[5]  Inner Circle initially obtained rights to the Appleton property by assignment of a previous license agreement on June 3, 2015. Appleton Holdings dragged its feet in signing a new license agreement and Plaintiff Radisson made execution of a new license agreement a condition of the Global Settlement Agreement identified below in paragraph 20.  The parties agreed to November 1, 2016 as the effective date of the new license agreement even though it was signed on March 15, 2017.

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL - 13

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

Attached to this Complaint as **Exhibits A-1 to I-2** are true and correct copies of the Radisson license agreements signed by the Inner Circle Franchisees (identified as **A-1, B-1, C-1, D-1, E-1, F-1, G-1, H-1, and I-1**) and associated amendments thereto. (identified as **A-2, B-2, C-2, D-2, E-2, F-2, G-2, H-2, and I-2**)

21.     In a series of written communications from Plaintiff Radisson to Inner Circle's Joe Gillespie sent between August 26, 2016 and December 1, 2016, Plaintiff Radisson notified the Inner Circle Franchisees of operational and monetary defaults under their license agreements with Radisson.

22.     On December 13, 2016, Plaintiff Radisson and each of the Inner Circle entities entered into a Global Settlement Agreement (the "GSA") to resolve the ongoing dispute surrounding the Inner Circle defaults. Attached to this Complaint as **Exhibit J** is a true and correct copy of the GSA. The agreement was designed to give the Inner Circle Franchisees the ability to implement Radisson-imposed operational needs in a structured manner agreed upon by the parties. Section 22 of the GSA set forth the amounts of past due fees owed to Plaintiff Radisson by each Inner Circle franchisee, which as of the date of the GSA totaled $1,920,608.26.

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL - 14

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

23.     In exchange for the Inner Circle Franchisees entering into the GSA, agreeing to satisfy ongoing obligations in their license agreements with Radisson, executing amendments to the license agreements setting forth updated Product Improvement Plans (the "PIPs") for each property (the "PIP Amendments"), and granting Radisson a full and complete release, Radisson agreed to conditionally reduce the amount of past due debt to $1,000,000, which the Inner Circle Franchisees agreed to pay in four installments between January 15, 2017 and April 30, 2017.[6] (12/13/16 GSA, §§ 22-23.)

24.     The central obligations undertaken by the Inner Circle Franchisees in the GSA included: (a) paying the $1,000,000 settlement amount on the schedule identified in paragraph 21; (b) making timely payments for all amounts invoiced after November 16, 2016 pursuant to each license agreement; (c) entering into and implementing the PIP Amendments; (d) ongoing

_____

[6]   A PIP is a document detailing upgrades and replacements that a franchisor will require if a hotel is to be part of a specific brand's franchised properties.

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL - 15

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

compliance with the Radisson license agreements as amended pursuant to the GSA; and (e) raising their NPS scores.[7]

25.    The Inner Circle Franchisees breached the GSA and license agreements, which is being litigated in a separate proceeding captioned *Radisson Hotels International, LLC v. 205 Wolf Holdings, LLC, et al.*, Case No. 27-CV-18-4230 (Hennepin County District Court, State of Minnesota) (the "Inner Circle Litigation").  In that case, Plaintiff Radisson seeks from the Inner Circle Franchisees liquidated damages in the amounts established by the contracts.

26.    Because Red Lion actively interfered with the nine license agreements and the GSA and induced the Inner Circle Franchisees' breach thereof, Radisson seeks redress in this lawsuit for damages flowing from Red Lion's tortious conduct and statutory violations, which it does not seek to recover or is not legally entitled to recover in the Inner Circle Litigation. This

---

[7] A NPS (Net Promoter Score) is a management tool used in the hotel industry to gauge loyalty in customer relationships.  A higher NPS means that a particular hotel's customers will promote the property; a lower NPS likely means that the customers will serve as detractors.

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL - 16

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

includes, without limitation, damages resulting from the market displacement caused by Red Lion's interference in the agreements between Radisson and the Inner Circle franchisees, reputational harm, and the costs associated with having to amend its Franchise Disclosure Document ("FDD") at the time of the conversion.

27.    A condition of the GSA was that the Inner Circle Franchisees would execute amendments to each license agreement, which changed Plaintiff Radisson's Article 6 fee structure to the benefit of the Inner Circle Franchisees and modified the time required for completion of the PIPs by each Inner Circle property. Specifically, each amendment (i) lowered the prospective royalties owed under Section 6.2 of each license agreement subject to Inner Circle's compliance with the terms of the GSA, the license agreement, and the amendment (*see e.g.*, 12/13/16 High Point Amendment, § 3, Exhibit B-2); (ii) lowered the prospective marketing contribution amount owed under Section 6.3 of each license agreement subject to Inner Circle's compliance with the terms of the GSA, the license agreement, and the amendment (12/13/16 High Point Amendment, § 4, Exhibit B-2); (iii) lowered the prospective reservation fees owed under Section 6.4 of each license agreement subject to Inner Circle's compliance with the terms of the GSA, the license agreement, and the

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL - 17

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

amendment (12/13/16 High Point Amendment, § 5, Exhibit B-2); (iv) modified Section 18.2(c) of the license agreement to give the Inner Circle Franchisees additional time to improve their NPS (12/13/16 High Point Amendment, § 6, Exhibit B-2); and (v) replaced Section 18.2(e) of each license agreement with new deadlines for completion of the PIP Amendments for each property, with at least 50 percent of the PIP obligations required to be completed by January 1, 2018. (12/13/16 High Point Amendment, § 7, Exhibit B-2.)

28.     Consistent with the PIP Amendments and the terms of the GSA, Plaintiff Radisson personnel conducted PIP reviews at each property between November 30, 2017 and December 17, 2017 to assess whether the Inner Circle Franchisees were complying with their amended PIP obligations.

29.     Plaintiff Radisson prepared comprehensive reports of these PIP site visits. The reports show that the Inner Circle Franchisees had failed to meet the contractually-mandated benchmark of completing at least 50 percent of their respective PIP work as of the time Plaintiff Radisson completed its reviews (i.e. the first 17 days of December). Plaintiff Radisson further concluded that the completion percentage was closer to 0-10 percent. Plaintiff Radisson Vice President of Owner Relations Judd Wadholm advised Inner Circle of Plaintiff Radisson's initial PIP assessments by email on January 8, 2018.  As of January

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL - 18

11, 2018, Mr. Wadholm's emails demonstrate that he was struggling to make any connection with Joe Gillespie and it appeared that Inner Circle had decided to cease communicating with Plaintiff Radisson.

30.     In fact, Mr. Gillespie and Mr. Nalley openly flaunted Inner Circle's failure and/or refusal to complete the work required in the PIP Amendments and the GSA.

31.      Mr. Nalley told Plaintiff Radisson' Senior Vice President of Franchise Operations Aly El-Bassuni that Inner Circle "*would rather pay liquidated damages than make these investments.*"

32.     However, based on the observations of  at least one Inner Circle onsite General Manager and upon information and belief, the company actually lacked sufficient funds to perform the work required by the PIP Amendments, and Inner Circle accordingly used the GSA as a stall tactic.

33.     In the Fall of 2017, Mr. Nalley admitted to an Inner Circle onsite property manager that Inner Circle had no intention of completing the property upgrades.  Nalley boldly questioned what Plaintiff Radisson could do about it since Inner Circle owned 10 percent of the Plaintiff Radisson System.

34.     It is clear that Defendant Red Lion induced the Inner Circle Franchisees to engage in such conduct and make these brazen proclamations by

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL - 19

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201

VOICE: (509) 455-8711 • FAX: (509) 455-8734

promising to shower the Inner Circle Franchisees with the money and loans they so desperately needed if the Inner Circle Franchisees simply walked away from their current brand and disregarded their contractual obligations to Plaintiff Radisson.

35. On January 19, 2018, after the January 1, 2018 deadline to meet the requirements in the PIP Amendments had passed, Mr. Wadholm instructed Plaintiff Radisson personnel to visit each property a second time and again assess the status of the PIP renovations no later than February 1, 2018.

36. On January 24, 2018, Plaintiff Radisson's Teresa Glatz advised Mr. Wadholm that she had completed her PIP verification visit at the High Point, North Carolina hotel and concluded that nothing had been done to further implement the PIP Amendments since Plaintiff Radisson's previous visit in December.

37. Most critically, during this visit Ms. Glatz met with the Director of Sales for High Point, who told Ms. Glatz, "*that **all** of the Radisson's [sic] are converting to Red Lion and that Red Lion is giving key money*." (emphasis added.) The Director of Sales in High Point advised that she herself had learned of this fact only the day before when she was mistakenly copied on an email about the issue. Similarly, on or about January 24, 2018, the General

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL - 20

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

Manager of the Appleton, Wisconsin hotel admitted to Plaintiff Radisson's Scott Doble that he had recently done a PIP walk through with a representative of Defendants Red Lion.

38.    On January 31, 2018, Plaintiff Radisson sent a "cease and desist" letter to Defendants Red Lion.   In that letter, Plaintiff Radisson advised Defendants Red Lion that it knew that Defendants Red Lion had inspected the nine Inner Circle properties, provided PIPs for their conversion to the Red Lion brand, and offered "key money" to the Inner Circle Franchisees to re-brand. Attached to this Complaint as **Exhibit K** is a true and correct copy of Plaintiff Radisson's January 31, 2018 cease and desist letter.

39.    Plaintiff Radisson further advised Defendants Red Lion that the Inner Circle Franchisees had no contractual right to terminate their license agreements with Plaintiff Radisson and that any conversion to Defendants Red Lion would constitute a breach of those agreements.    Plaintiff Radisson demanded that Defendants Red Lion refrain from engaging in any conduct that could constitute tortious interference with the Plaintiff Radisson agreements. Defendants Red Lion did not respond to the cease and desist letter.

40.    Between February 28, 2018 and March 7, 2018, Plaintiff Radisson learned from Amadeus, SABRE, and other companies that maintain GDS

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL - 21

codes[8] that someone had initiated changes for the Inner Circle Franchisees'
GDS codes from Plaintiff Radisson to Defendants Red Lion.

41.    Precisely during this period, on March 1, 2018, Defendants Red
Lion issued its press release announcing the conversion of the Inner Circle
hotels to the Red Lion Brand.

42.    After Defendants Red Lion's March 1, 2018 press release and
upon discovering that the Inner Circle Franchisees had converted to Defendants
Red Lion in breach of their contracts with Plaintiff Radisson, Plaintiff Radisson
terminated each licensing agreement. Specifically, Plaintiff Radisson terminated
the Albany, New York, Billings, Montana, Cheyenne, Wyoming, and North
Baltimore, Maryland license agreements on March 12, 2018 due to their failure
to continuously operate as Plaintiff Radisson properties. Plaintiff Radisson
terminated the Cromwell, Connecticut, Hartford, Connecticut, Highpoint, North

---

[8] GDS codes are identifiers unique to each hotel that are used in the background
of reservation systems by companies such as Expedia and Priceline to facilitate
the booking of reservations at hotels.  The GDS code is linked to the brand
under which the hotel is operating, and each hotel can only have one GDS code
in any particular system.

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL - 22

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

Carolina, and St. Joseph, Missouri license agreements on April 6, 2018 due to NPS and PIP defaults. Plaintiff Radisson then terminated the Appleton, Wisconsin license agreement on May 7, 2018 due to the PIP default and unlawful conversion.

43.    Defendants Red Lion's intentional and unprivileged interference with the Plaintiff Radisson-Inner Circle contracts gave Defendants Red Lion instantaneous market presence in nine markets where it had not previously had hotels, to the exclusion of its direct competitor Plaintiff Radisson. Defendants Red Lion's interference with the Plaintiff Radisson-Inner Circle contracts has left Plaintiff Radisson with a significant market void that will be difficult, if not impossible, to fill. Additionally, Defendants Red Lion's intentional and unprivileged interference with the Plaintiff Radisson-Inner Circle contracts caused Plaintiff Radisson significant reputational loss and forced Plaintiff Radisson to amend its FDD at significant cost.

## FIRST CLAIM FOR RELIEF
### [Tortious Interference with License Agreements and GSA]

44.    Plaintiff Radisson repeats and re-alleges the foregoing paragraphs of this Complaint as if set forth in full.

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL - 23

45.     The Radisson-Inner Circle license agreements and GSA were valid and existing contracts between Plaintiff Radisson and each of the Inner Circle Franchisees identified in this Complaint at the time of Defendants Red Lion's intentional and unprivileged interference.  Defendants Red Lion's interference was the moving force and proximate cause behind the Inner Circle Franchisees' breaches, inducing them to willfully ignore their contractual obligations and cease operating their hotels under the Plaintiff Radisson name. Plaintiff Radisson was forced to terminate these agreements because of the Red Lion conversion and was deprived of the full benefit of its contracts with the Inner Circle Franchisees.

46.     RLH Corporation and/or RLH Franchising had actual knowledge of the contractual relationship between Plaintiff Radisson and the Inner Circle Franchisees, including the specific terms of the contracts appended to this Complaint, or reasonably should have known of those contracts and their terms.

47.     By acting in the manner alleged in this Complaint, RLH Corporation and/or RLH Franchising intentionally interfered with the Inner Circle License Agreements and GSA and induced and caused the Inner Circle Franchisees to breach those agreements in advance of their expiration. Defendants were the moving force of the breach.

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL - 24

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

48.    RLH Corporation and/or RLH Franchising interfered with Plaintiff Radisson's contractual relationships for an improper purpose or through the use of improper means as described more fully above.

49.    RLH Corporation's and/or RLH Franchising's malicious and unprivileged conduct alleged in this Complaint caused Plaintiff Radisson damage.

WHEREFORE, Plaintiff Radisson Hotels International, Inc. respectfully prays for the following relief:

a.    Compensatory, actual, and restitutionary damages sufficient to make Plaintiff Radisson whole at an amount to be determined at trial;

b.    Attorneys' fees and costs as allowed by law;

c.    Such other relief as the Court deems just and proper.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY IN THIS CASE**

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL - 25

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

DATED this 26th day of September, 2018.

DUNN & BLACK, P.S.

s/ ROBERT A. DUNN
ROBERT A. DUNN, WSBA No. 12089
ALEXANDRIA T. DRAKE,
WSBA No. 45188
Attorneys for Plaintiff
Dunn & Black, P.S.
111 North Post, Ste. 300
Spokane, WA 99201-0907
Telephone: (509) 455-8711
Fax:       (509) 455-8734
Email:     bdunn@dunnandblack.com
           adrake@dunnandblack.com

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL - 26

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

OF COUNSEL:
Mark M. Leitner; State Bar No. 1009459; mleitner@llgmke.com
Joseph S. Goode; State Bar No. 1020886; jgoode@llgmke.com
Allison E. Laffey; State Bar No. 1090079; alaffey@llgmke.com
Amanda E. Melrood; State Bar No. 1089610; amelrood@llgmke.com
LAFFEY, LEITNER & GOODE LLC
325 E. Chicago Street, Suite 200
Milwaukee, WI 53202
(414) 312-7003
(414) 755-7089 (facsimile)
Pro Hac Vice Admissions to be Applied For

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL - 27

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734